Thank you, Your Honor. Michael Bigelow on behalf of Thomas Preciado, appellant in this matter. I'm having some trouble hearing you. Could you pull that microphone and point it at your lips? Is that better? A little bit better. I'll try to speak up. My name is Michael Bigelow. I represent Thomas Preciado, the appellant in this matter. I'm going to deal with the confession and with the medical issue. First, the confession ever so – or the medical – no, the confession, I guess. We'll do that ever so briefly. Considering the totality of the circumstances, the state court and the district court seemed to believe that under the totality of the circumstances, the voluntary confession should stand. They held it voluntary. They held that there was no problem with it. The state court and the district court both focused, to a greater degree than perhaps was appropriate, on the age of the defendant. He was 14 years old. And that really seems to be most everything they focused on. But age is just a factor. This is a kid, and he was just a kid. Not very bright kid, but a kid. Who, in fact, had just been run over by a police officer. He's interviewed by law enforcement at the scene, and he is Mirandized. We're not really sure the extent of the Mirandization, but we can accept the officer's word that – The kid lips off and starts reciting his Miranda rights. The officer stops him. The officer's not really sure at that point, I think a fair inference is, that the kid understood his rights. They take him to the police station. He is in a state of shock. He shows the signs and symptoms of shock. This is interesting, but we're two levels removed from the fact-finding in this case. The fact-finding was done by a state court judge. So we now have between us and this testimony that you're talking about, the disguise of what happened, we have two trial judges. And one of them, the state trial judge, is protected by AEDPA, by the very strong presumption of correctness that attaches to state court findings. So, you know, all these are, I think, fine arguments that you could have argued had you been – I assume you were not the lawyer of the state court, but had you been the lawyer of the state court, you would have been able to argue to the trial judge. But we're past all that, and the state trial judge made findings. And you have to tell us why they are wholly untenable. You know, that's essentially the standard of AEDPA. But they didn't really make those findings. They said, yeah, under the totality of the circumstances. But the cases I cite, the Supreme Court cases I cite, Haley, Ferris, and Gallegos, the state court is ruling that under the totality of the circumstances, the confession, if you will, was voluntary. That ruling was contrary to those cases. And it was unreasonable in light of the precedents set forth by those Supreme Court cases that are cited in my brief. Let me get one thing clear. I'm sorry, Your Honor. Let me try to get one thing clear. Is there a difference between what you're describing in a factual sense and what the state court found, or is it the conclusion that you disagree with? I'm not sure I understand the Court's question. Well, the question is, did the state court make findings that are different from the facts you described to us, or is it the conclusion you draw from those facts that is different? Well, the answer to that is both. But really, they don't go the state court does not consider all of the factors available to it. It simply doesn't consider all of those factors. And the state and the Supreme Court, U.S. Supreme Court decisions, which I cite, do ask, do request state courts to make those findings. And California state court just never got to it. It said, well ---- So is this, you argue this is contrary to, or are you arguing it's an unreasonable application of Supreme Court precedent? Which, you're saying there's a contradiction? The Supreme Court says X, and the state court does not X? It unreasonably applies. The state court unreasonably ---- excuse me, I beg your pardon. The state court unreasonably applied U.S. precedent. But ---- How? What is it that the U.S. Supreme Court says, and what is it that the state court does that's unreasonable? The Supreme Court says that we need to consider age. We need to consider whether, and I think the Ninth Circuit ---- Can't go there. Yeah. Can't go there. Yeah. You got to stick with Supreme Court. We know they consider age. You've told us they consider age, and the state court considered age, because you said they considered age too much. I think that the Supreme Court also says that we need to consider whether a parent is present. In this case, a parent wasn't present. Yeah, sure. He said, I don't want to talk to my mom. But we consider that on the question of involuntariness. The Supreme Court, the state court ---- We say didn't consider. Do you think the state court was unaware of the fact? I'm sorry, Your Honor. Do you think the state judge didn't know that the mother wasn't present? Are you saying that? No. No, the state court knew that, but in the ---- but did not factor it in, in the totality of circumstances when making its decision. How do you know? How do you know he didn't factor it, the state judge didn't factor it? Well, because they gloss over it, they make no ---- So not only is there an unreasonable application, as the court suggests, but there is also their findings are contrary to Supreme Court precedent. It just doesn't add up. We've got a 14-year-old kid who ---- I'm sorry, I don't get it. Why doesn't it add up? I mean, he's a 14-year-old kid. He's a 14-year-old kid who's just been run over. You want to hear why? He complains of all of the things that would affect one's ability to reasonably understand and to protect himself or to discuss with adults. You mentioned a couple of times that he was run over. He was taken to the hospital, was he not? Actually, he was not. Wasn't he examined and discharged? He was examined. He was taken. My understanding is he was taken to the police station. They questioned him, and then the paramedics came in and released him. They found no injuries to him? Well, that's correct. Pardon me? That's correct. According to the testimony, there were no injuries in the paramedics' report. And they drew blood and there was no alcohol in his system? That's also true. Where was the blood drawn? That's a good question. I thought the paramedics might have done it. Let me ask you, you only have a minute and a half left. Regarding the cross-examination of the doctor. Regarding the cross-examination. Did he testify, the doctor, was it Dr. Edquigue? Yes. Did he testify to anything that you believe to be untrue? I think he overstated his position. What specifically did he say that was untrue? I can't recall, Your Honor. Well, I mean, your argument is that he wasn't sufficiently impeached. And I can't find anywhere that you've identified anything that he said that you don't agree with. Fair enough. She presents at the scene, and everybody seems to focus on the carotid, which is fair. First of all, California law, gross negligence can be a superseding, intervening, and intervening or superseding cause of death in California. McGee says that. Roberts says that. Yet the state court, the trial court, said malpractice doesn't, is not, and is never an intervening cause. Because your facts were, the facts of your case, were that she suffered two injuries, one to her carotid artery and one to her liver, that would have been fatal with or without. I don't, I question seriously whether the carotid injury would have been fatal simply because she didn't have it. Well, you say you, excuse me, you say you question it, but the pathologist said it would have been fatal, didn't he? When she presents at the hospital, she's not in hemorrhaging. She's not hemorrhaging. It's basically a nick. Did you have any medical evidence that says these were not fatal injuries? That what? That these were not fatal injuries. Did you present any medical evidence whatsoever? No. Pardon me? No. No. No. And that's the problem. Well, that's the problem. That's why the judge said you can't prove your malpractice defense. Because we weren't permitted to do so. She does not begin to be permitted to do so because you had no medical evidence to support it. But it goes further than that because we weren't permitted to, even though at the hospital she doesn't begin to hemorrhage until the doctor sits her up. Now, the McGee case and the other cases all talk about non-treatment. I'll talk about, I'm out of time, I'll talk about non-treatment. Okay. Thank you. Distinguishable from this. Thank you very much. Thank you. Good morning, Your Honors. May it please the Court. Mark Johnson, Deputy Attorney General, appearing on behalf of Appellee. As you're probably aware, I didn't write the brief in this case. My colleague, Barton Bowers, did, and I have reviewed his brief. I find he did a very, very thorough job. I don't think I have much to add beyond that. That wouldn't simply be reiterating what he has already written, except to answer any hypothetical argument of harmless error that you might have. Other than that, I'd be willing to answer any questions you might have. Thank you. Thank you. The case is argued. We'll stand submitted.
judges: Kozinski, Reinhardt, Silverman